PECK, Administrator *v.* HUNTER and Others.

When an answer was required to be without oath, under the chancery practice in this state, the evidence of two witnesses was not necessary to prove the matters denied by the answer.

The evidence of one witness, in such case, was entitled to the same weight as it would have had in establishing the affirmative of an issue at law.

An answer in chancery not under oath was not evidence of the matters alleged in it.

The burden of proving matter pleaded in avoidance, is upon the party alleging it.

ERROR to the *Jefferson* Circuit Court.

STUART, J.—Bill in chancery to set aside certain sales alleged to be fraudulent, and to subject the property to execution.

The bill alleges a recovery at law by *Peck*, as administrator of *Stetson*, deceased, against *Cortes W. Hunter*, for the sum of 1,984 dollars, and to an execution issued thereon a return of *nulla bona* in the *Jefferson* Circuit Court. It is further alleged that this recovery was had upon the transcript of a judgment recovered by *Stetson*, in his lifetime, against *C. W. Hunter*, in the state of *Vermont*, in the year 1832; that shortly afterwards *C. W. Hunter* removed from *Vermont* to the city of *Madison*, bringing with him a large amount of property; that he entered into partnership with one *James W. Hinds*, and thereby, and by other business transactions, made large profits, and

acquired several valuable parcels of real estate; among others, lot seventy-six in the old town of *Madison*, worth 4,000 dollars, the entire interest in which he owned in 1842; that in company with *John W. Hunter*, he acquired several valuable parcels of real estate, which are particularly described, the title to which he has fraudulently transferred to *John W. Hunter*, to screen it from execution; that *John* is his brother, a young man, without means to purchase the valuable property held in his name; that he is a bricklayer, and has no other known mode of acquiring wealth but by his trade; that this trade, considering the brief period he has pursued it, is wholly inadequate to account for the amount of property he has amassed. The bill further charges that *Cortes* conveyed to *John* in 1846, on the prospect of being sued by complainant at law, and for the purpose of delaying, hindering and defrauding his creditors; and that *John* received it with the like intent towards the creditors of *Cortes*. It is further charged that large and valuable improvements made upon the several parcels of real estate, were made almost entirely by *Cortes*.

Several interrogatories, based upon the statements and allegations in the bill, are addressed to the defendants, to be specifically answered.

The prayer of the bill is, that the fraudulent deeds be set aside, and the property subjected to execution, &c.; and for general relief.

The *Hunters* both answer. The answer of *Cortes* admits the recovery at law. He admits that he had often stated that he did not intend to pay the judgment or any part of it; that both before and since leaving *Burlington, Vermont*, he had spoken of it to his brother *John*, and of his determination never to pay it; that most of these conversations occurred prior to the purchase by *John* of the property embraced in the deed of *September* 6, 1846.

These admissions are accompanied with a qualification, intended to show the reason why he did not mean to pay the judgment. The substance of the qualification is, that he had on all occasions insisted that *Stetson's* demand was

unjust, and that he did not think it ever could be col-
lected.

How far such a qualification can avail against a judg-
ment at law, scarcely deserves even a passing notice.

It appears further, from the answer, that the partnership between *C.* and *J. Hunter* continued from *March*, 1840, until the fall of 1844. *Cortes* denies that he made any profits while in company with his brother. On the contrary, he asserts, in general terms, that he was "greatly the loser."

The article of dissolution between *Hinds* and *Hunter*, and a general statement of the affairs of that firm, are embodied in the answer.

The answer further assumes to set up several affirmative matters in avoidance of charges in the bill.

Thus, the respondent sets up that the consideration of the deed of *September*, 1846, was the agreement of *John* to discharge 4,500 dollars of *C. Hunter's* debts. This is urged as the chief purpose of the transaction, and not the intent to hinder or delay creditors, as charged in the bill.

To repel the charge that *John* was without means, save the earnings of his trade as bricklayer, *Cortes* avers, that from 1841 to 1845, *John* was profitably engaged in the winter seasons in buying and selling furs, whereby he made net profits to the amount of from 3,000 to 5,000 dollars, and that, in addition to that, *John* had been in partnership with one *Taylor* in building contracts, out of which he made large profits.

But the *Hunters* take no depositions on these points.

The answer of *Cortes* admits that he had no other property subject to execution than that conveyed to *John.* It is admitted that the improvements on the property thus conveyed were worth from 4,000 to 5,000 dollars; but it is stated affirmatively that they were made mostly by *John.*

*John's* answer coincides with and follows pretty accurately that of his brother. The exhibit incorporated in the answer shows *John's* business transactions from 1840 to 1847 to amount to 18,470 dollars and 78 cents.

The deed of *September*, 1846, of *C. Hunter* to *John Hun-*

Nov. Term,
1855.

PECK
v.
HUNTER.

*ter* is set out. The consideration expressed on its face is 4,500 dollars. To repel the charge that the deed was without consideration, *John* exhibits a list of claims paid by him, *John*, for the firm of *Hinds & Co.*, amounting to 3,344 dollars and 27 cents, and some 5,000 dollars more paid for the firm of *John Hunter & Co.*, in each of which *C. Hunter* was an equal partner.

Both answers conclude with a general denial of the fraud charged.

The answer of *Collins* puts nothing in issue material to the determination of the questions involved.

Replication in the usual form.

The cause was submitted for final hearing on the pleadings and the deposition of *Hinds*, taken by the complainant. The deposition of *C. Hunter*, taken by the defendants, was suppressed. So that the deposition of *Hinds*, the former partner of *C. Hunter*, was the only evidence in the case. The Court dismissed the bill for want of equity. *Peck*, the complainant, prosecutes error.

We are of opinion that the Court erred in dismissing the bill. In the state of the pleadings and evidence, the complainant had made a strong case. The bill, in most of its material parts, is sustained by the deposition of *Hinds*. The answers are all without oath. They were so required to be by the bill. It does not, in such cases, require two witnesses to prove the matters put in issue by the denial of the answer. Acts of 1846–7, p. 60.

The evidence of one witness is entitled to the same weight as it would have had in establishing the affirmative of an issue at law. Such is the consideration to which the deposition of *Hinds* is entitled. He stood unimpeached and uncontradicted. Of itself, it was sufficient to give that preponderance of evidence in favor of the case made in the bill, which is ordinarily required in civil cases. That was all that was necessary to entitle the complainant to a decree.

Even had the answers been under oath, as required by the former chancery practice, with all the effect given to such pleadings under that system, the deposition of *Hinds*,

taken in connection with the strong corroborating cir-
cumstances to be found in the admissions of the answers
themselves, would, in our opinion, have been sufficient to
entitle the complainant to the relief sought.

So far, therefore, as the case made in the bill, and sim-
ply denied in the answers, is concerned, *Peck* was entitled
to a decree, unless the matters in avoidance set up in the
defence were sufficient to countervail it, and were also
established by proper evidence.

We have seen that several affirmative matters were
alleged in the answers. But the only deposition taken in
support of them was that of *Cortes Hunter*, which, on mo-
tion, was properly suppressed. The answers themselves
are not evidence of the matters alleged in them. *Larsh* v.
*Brown*, 3 Ind. R. 234. The party who pleads in avoid-
ance, takes upon himself the burden of the proof as to the
matters so pleaded. *West* v. *Thornburgh*, 6 Blackf. 542.—
*Pierce* v. *Gates*, 7 *id.* 162.—*Baker* v. *Leathers*, 3 Ind. R.
558. Thus, to repel the very strong presumption raised
against *John* of having made the purchase of *September*,
1846, without any consideration, and with the intent of
defrauding his brother's creditors, he should not merely
have *alleged* the terms and consideration of the contract,
but he should have *proved* it; and shown to what extent
it had been discharged at the time the bill was filed. And
even that, considering the admissions of the answer, might
not have saved him. *Wright* v. *Brandis*, 1 Ind. R. 336.

Upon the whole record, as it now stands, the complain-
ant is, in our opinion, clearly entitled to the relief sought.
To what extent in detail it is not necessary for us to say.
To do exact justice, the parties should, perhaps, be permit-
ted to take further depositions. The numerous and com-
plicated facts will be more proper for the consideration of
a jury, under the new practice.

*Per Curiam.*—The decree is reversed with costs. Cause
remanded, with instructions to the Circuit Court to per-
mit the parties to amend, &c.

*J. G. Marshall* and *C. Walker*, for the plaintiff.

*J. Sullivan*, for the defendants.